BROOKE v. HILL.

1. A CONTRACT to ship flour and permit examination before acceptance, is substantially complied with by shipping to order with notice attached to bill of lading, and subsequently ordering that buyer be given an opportunity to examine.

2. ADMITTED FACTS—JURY.—That a witness for plaintiff testified to an affirmative fact alleged in the answer, does not make it an admitted fact, but the question was properly submitted to the jury.

Before WATTS, J., York, April term, 1902. Affirmed.

Action by Geo. W. Brooke against W. L. Hill. From judgment for plaintiff, defendant appeals.

*Mr. Geo. W. S. Hart,* for appellant.

*Messrs. Finley & Brice,* contra.

January 19, 1903.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   In order to understand clearly the issue herein, it will be necessary to refer to the pleadings. The complaint alleges:

"I.  That on or about the      day of May, A. D. 1898, the plaintiff, at the special instance and request of the defendant, W. L. Hill, sold and delivered to said W. L. Hill, goods, wares and merchandise, to wit: One car-load of flour at the value of $258.46, which said sum the said defendant promised and agreed to pay to the plaintiff for said flour upon the delivery of the same to him at Sharon, S. C.

"II.  That the said flour sold and delivered by the plaintiff to the defendant was reasonably worth the said sum of $248.46.

"III.  That the plaintiff carried out his contract with the defendant in every particular and did deliver the said car-load of flour of the kind, quantity and quality contracted for by the defendant at Sharon, S. C., on or about the      day of June, A. D. 1898; whereupon the said defendant refused to receive and accept said flour as he contracted and agreed to do, and the plaintiff was eventually forced to sell the same for $142.60.

"IV.  That the defendant, W. L. Hill, in violating his contract with the plaintiff and in refusing to accept the said flour and pay the plaintiff the sum of $258.46 therefor, as he has contracted and agreed to do, and in forcing the plaintiff to dispose of the same as best he could for the sum of $142.60, has damaged the plaintiff in the sum of $115.46.

"V.  That said flour, after being refused by the defendant, was taken charge of and sold by the plaintiff at the loss above mentioned, which loss defendant, W. L. Hill, profited by, being the purchaser of the flour with the distinct under-

standing and agreement by and between the plaintiff and the defendant that the same was without prejudice to any legal rights that the plaintiff had under his original contract with the defendant.

"VI. That the defendant resides in York County, S. C."

The answer states:

"1. That the defendant admits the allegation in the sixth section of the complaint.

"2. That he denies that the plaintiff sold and delivered a car-load of flour to the defendant, at the special instance and request of the defendant, as alleged in the first section of the complaint, and he alleges that on or about the 27th day of May, A. D. 1898, the defendant, upon the special solicitation of the plaintiff, gave to the plaintiff an order for a car-load of wheat flour, which was to be at once shipped to the defendant at defendant's place of business, Sharon, in the said county and State; that the defendant was to have the opportunity to test the flour after its arrival, and the defendant was under no obligation to take the flour if it was not as represented in respect to its quality; that the plaintiff, in violation of his contract with defendant, shipped a lot of flour to Sharon to his own order, and thereafter sent the bill of lading which he received from the carriers to the Loan and Savings Bank of Yorkville with a note attached to the same, with instructions to the said bank to deliver the bill of lading to defendant upon the execution by defendant of the note that was attached and its delivery to the bank for plaintiff's use.

"3. That defendant specially denies that the plaintiff ever shipped to the defendant the car-load of flour which defendant upon his solicitation agreed to purchase from him on or about the 27th day of May, A. D. 1898; he specially denies that the flour which the plaintiff shipped to himself at Sharon was of the kind and quality for which defendant had given him order, and avers that the flour which the plaintiff shipped to himself at Sharon was adulterated with corn meal or other substance, and defendant specially denies each and

every allegation in the complaint not hereinbefore or hereafter admitted.

"4. That the defendant admits that he afterwards purchased from the plaintiff the flour which the plaintiff had shipped to himself (the plaintiff) at Sharon, S. C., but denies that the plaintiff suffered any loss whatever, and specifically denies (if he did suffer loss) that he suffered any loss whatever by or through any act of this defendant."

The jury rendered a verdict in favor of the plaintiff for $108.76.

The appellant's first exception alleges error as follows: "1. Because his Honor erred in charging the jury that in his opinion it made no difference whether plaintiff shipped the flour direct to the defendant or shipped it in his own name, with bill of lading attached—it being incumbent upon the plaintiff to ship the flour in accordance with the contract." The other portion of the charge upon this question is as follows: "If the plaintiff agreed to ship this flour to the defendant, and he shipped the kind of flour that he agreed to ship, and he shipped it within a reasonable time after the defendant gave him the order, in my opinion it doesn't make any difference whether he shipped the flour direct to the defendant or whether he shipped it in his own name, with bill of lading attached; provided, if the contract was that he gave the defendant an opportunity to examine the flour—if that was the contract—it was incumbent upon the plaintiff to allow him to examine that flour. Well, if he shipped it in his own name, with a bill of lading attached, and informed and notified him, if he sent the bill of lading to the bank with a note attached and notified the bank upon his signing that note that the bill of lading was to be turned over to him, and also before that time notified the agent at the depot to give an opportunity to examine the flour, and he had that opportunity and refused and neglected to do it, then the defendant would be bound to pay for the flour. But if the contract was that the defendant was to have an opportunity to examine the flour, and no opportunity was

afforded him to do it, then that would release him from the
contract." The defendant, upon cross-examination, testi-
fied as follows: "Now, Mr. Hill, after the flour came, you
wrote to Mr. Brooke—you heard your letter read? A.
Yes, sir. Q. And claimed you had a right to sample that
flour and see if it came up to the sample you purchased it
by. Did not Mr. Brooke write here and instruct them to
turn that draft over to you? A. I think he did. Q. Well,
didn't you swear positively at the other trial that he did?
A. Well, I don't know. I think he did, as well as I remem-
ber. I don't know what he did. Q. Did you ever do
that—did you ever sample the flour? A. Sample the flour?
Yes, sir; of course, I sampled it. Q. I mean, did you go to
the bank and get that bill of lading? A. Did I go to the
bank? No. Q. Didn't Brooke give you leave to do that?
A. He wrote me he had instructed the bank to send it out to
me. Q. Did you ever come to get it? A. I did not. Q.
You made no effort to get it? A. I did not. Q. You made
no effort to get it? A. No, sir." It will thus be seen that
when the defendant objected to the manner in which the
flour had been shipped, the plaintiff notified him that he had
instructed the bank to send to him the bill of lading, and he
made no effort to get it. The testimony also shows that he
sampled the flour. Under these circumstances, we fail to
see wherein the charge was prejudicial to the appellant.

The second exception assigns error as follows: "2. Be-
cause his Honor erred and the jury was thereby misled in
saying to the jury: 'if the contract was that he give the
defendant an opportunity to examine the flour'—it
being the undisputed testimony of the plaintiff's own
witness, L. D. McKee, who, as salesman, had so-
licited the order, that defendant was to have the opportunity
to examine the flour." This fact was not admitted by the
pleadings; on the contrary, it was alleged in the answer and,
under section 189 of the Code, is deemed to have been con-
troverted by the plaintiff as upon a direct denial. That a
witness for the plaintiff testified to this allegation did not

have the effect of admitting the fact.   His Honor, therefore,
properly submitted the issue to the jury.   Furthermore, the
defendant's own testimony showed that he had the opportu-
nity to examine the flour.   This exception is, therefore,
overruled.

The third exception imputes error as follows: "3.  Because
his Honor erred and the jury was thereby misled, in saying
to the jury: 'and also before that time notified the agent at
the depot to give him an apportunity to examine the flour,
and he had that opportunity, and refused and neglected to
do it, then the defendant would be bound to pay for the
flour'—there being no testimony whatever that plaintiff had
notified the agent at the depot to give defendant an opportu-
nity to examine the flour, nor that defendant had such
opportunity and refused and neglected to make the examina-
tion."   We have shown that the defendant did have the
opportunity to examine the flour, and this exception must be
overruled.

The fourth exception contains the following assignment
of error: "4.  Because his Honor erred in charging upon the
facts and indicating his opinion thereon, when he used this
language: 'in my opinion, it doesn't make any difference
whether he shipped the flour direct to the defendant or
whether he shipped it in his own name, with the bill of
lading attached'—thus taking away from the jury the right
to pass upon the question of fact as to whether the mode of
shipment was a material stipulation in the contract between
the plaintiff and defendant."   The only objection which the
defendant made as to the manner of shipment was that he
was deprived of the opportunity of examining the flour.
This opportunity was afforded him by the plaintiff, as shown
by the testimony hereinbefore mentioned.   This exception is
also overruled.

The fifth exception alleges error as follows: "5th.  Because
the verdict of the jury was contrary to the law as laid down
by the Court, in this: That the jury was instructed that 'if
the contract was that the defendant was to have an opportu-

nity to examine the flour and no opportunity was afforded him to do it, then that would release him from the contract'— there being no evidence whatever that an opportunity was afforded the defendant to examine the flour." The question presented by this exception has already been disposed of, and the exception is overruled.

The sixth exception assigns error as follows: "6. Because his Honor erred in charging the jury that it was the duty of the defendant to have received the flour and to pay for it, even though he had to sign a note to get the bill of lading for the flour which the plaintiff had shipped to his own order, notwithstanding that the giving of a note was not stipulated for in the contract between the plaintiff and the defendant, nor was there any stipulation in such contract for the acceptance of a draft." The question raised by this exception is disposed of by what was said in considering the fourth exception, and is likewise overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.